IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHLOMO DANIEL MENASHI,                        :

    Plaintiff,                                :

                                            :

   .v.                                       :

AMERICAN HOME MORTGAGE          :
SERVICING, INC., a Delaware           :        Case No.
corporation; EQUIFAX INFORMATION      :
SERVICES, LLC, a Georgia limited      :
liability company; TRANSUNION, LLC,   :
a Delaware limited liability company; :
EXPERIAN INFORMATION                  :
SOLUTIONS, INC., an Ohio              :
corporation; and WILMINGTON           :
TRUST COMPANY, as Owner Trustee       :
of the American Home Mortgage         :
Investment Trust 2007-1,              :

    Defendants.                               :

_____

## COMPLAINT

## INTRODUCTION

1.    This is an action for damages against American Home Mortgage Servicing, Inc.

(AHMSI), Equifax Information Services, LLC (Equifax), TransUnion, LLC

(TransUnion), and Experian Information Solutions, Inc. (Experian) for violations of

the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 et seq., an action against

AHMSI for violations of the Florida Consumer Collection Practices Act (FCCPA),

Fla. Stat. §§ 559.55 et seq., and an action against AHMSI and Wilmington Trust

Company (Wilmington), as Owner Trustee of the American Home Mortgage

Investment Trust 2007-1 for specific performance or, alternatively, for breach of contract (collectively, AHMSI, Equifax, TransUnion, Experian, and Wilmington are referred to herein as the Defendants).

## JURISDICTION AND VENUE

2.  Subject matter jurisdiction is proper pursuant to 15 U.S.C. § 1681p, 28 U.S.C. § 1331, 28 U.S.C. § 1337, and FLA. STAT. § 559.77.

3.  Venue is proper pursuant to 28 U.S.C. 1391(b).

4.  Plaintiff Shlomo Daniel Menashi (Menashi) is resident of Tampa, Florida and is authorized by law to bring this action.

5.  All claims and injuries alleged herein occurred in Tampa, Florida.

6.  AHMSI is a corporation organized under the laws of the State of Delaware with its principal place of business located at 1525 South Belt Line Road, Coppell, Texas 75019.

7.  AHMSI systematically and regularly conducts business in the State of Florida.

8.  AHMSI committed a tortious injury in the State of Florida.

9.  AHMSI may be served by personal service upon its registered agent in the State of Florida: C T Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.

10.  Alternatively, AHMSI may be served by personal service upon an authorized agent or officer at its principal place of business or in accordance with the Federal Rules of Civil Procedure, the laws of the State of Florida, or the laws of the State of Delaware.

11.   Equifax is a limited liability company organized under the laws of the State of Georgia with its principal place of business located at 1550 Peachtree Street N.W., Atlanta, Georgia 30309.

12.   Equifax systematically and regularly conducts business in the State of Florida.

13.   Equifax committed a tortious injury in the State of Florida.

14.   Equifax may be served by personal service upon its registered agent in the State of Florida: Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301.

15.   Alternatively, Equifax may be served by personal service upon an authorized agent or officer at its principal place of business or in accordance with the Federal Rules of Civil Procedure, the laws of the State of Florida, or the laws of the State of Georgia.

16.   TransUnion is a limited liability company formed under the laws of the State of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

17.   TransUnion systematically and regularly conducts business in the State of Florida.

18.   TransUnion committed a tortious injury in the State of Florida.

19.   TransUnion may be served by personal service upon its registered agent in the State of Florida: The Prentice-Hall Corporation System, Inc., 1201 Hays Street, Tallahassee, Florida 32301.

20.   Alternatively, TransUnion may be served by personal service upon an authorized agent or officer at its principal place of business or in accordance with the Federal

Rules of Civil Procedure, the laws of the State of Florida, or the laws of the State of Delaware.

21. Experian is a corporation organized under the laws of the State of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

22. Experian systematically and regularly conducts business in the State of Florida.

23. Experian committed a tortious injury in the State of Florida.

24. Experian may be served by personal service upon its registered agent in the State of Florida: C T Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.

25. Alternatively, Experian may be served by personal service upon an authorized agent or officer at its principal place of business or in accordance with the Federal Rules of Civil Procedure, the laws of the State of Florida, or the laws of the State of Ohio.

26. Wilmington is a corporation organized under the laws of the State of Delaware with its principal place of business located at 1100 North Market Street, Wilmington, Delaware 19890.

27. Wilmington, as part of its duties as owner trustee of the American Home Mortgage Investment Trust 2007-1, entered into a contract that is the subject of the claims against Wilmington in the State of Florida.

28. Wilmington may be served by personal service upon an authorized agent or officer at its principal place of business: 1100 North Market Street, Wilmington, Delaware 19890.

29. The Plaintiff has satisfied all conditions precedent to this action.

## FACTUAL ALLEGATIONS

30. AHMSI uses the mails and telephone communications in its business.

31. AHMSI regularly collects, or attempts to collect debts, due and owing, or asserted to be due and owing, to third-parties.

32. AHMSI is a "person" as contemplated by FLA. STAT. § 559.72.

33. Equifax regularly assembles and evaluates consumer credit information and other consumer information for the purpose of furnishing consumer reports to third parties.

34. Equifax uses the mails, telephone communications, and other instrumentalities of interstate commerce in conducting its business and for the purpose of preparing or furnishing consumer reports.

35. Equifax is a consumer reporting agency as contemplated by 15 U.S.C. § 1681a(f).

36. TransUnion regularly assembles and evaluates consumer credit information and other consumer information for the purpose of furnishing consumer reports to third parties.

37. TransUnion uses the mails, telephone communications, and other instrumentalities of interstate commerce in conducting its business and for the purpose of preparing or furnishing consumer reports.

38. TransUnion is a consumer reporting agency as contemplated by 15 U.S.C. § 1681a(f).

39. Experian regularly assembles and evaluates consumer credit information and other consumer information for the purpose of furnishing consumer reports to third parties.

40.   Experian uses the mails, telephone communications, and other instrumentalities of interstate commerce in conducting its business and for the purpose of preparing or furnishing consumer reports.

41.   Experian is a consumer reporting agency as contemplated by 15 U.S.C. § 1681a(f).

42.   Wilmington is the owner trustee of the American Home Mortgage Investment Trust 2007-1 (Investment Trust).

43.   Wilmington, acting as trustee, is the owner and holder of a promissory note and mortgage encumbering property owned by Menashi.

44.   Pursuant to the terms of the Investment Trust, AHMSI is the designated loan servicer responsible for collecting payments from Menashi.

45.   AHMSI acts as an agent of Wilmington and the Investment Trust.

46.   AHMSI has apparent authority to act on behalf of Wilmington and the Investment Trust.

47.   Menashi reasonably believed AHMSI was the agent acting on behalf of the owner and holder of his promissory note and mortgage, Wilmington and the Investment Trust.

48.   As part of its loan servicing duties, AHMSI is authorized to negotiate and finalize mortgage modifications on behalf of Wilmington and the Investment Trust.

49.   In or around February and March 2009, Menashi contacted AHMSI to negotiate a loan modification under the Home Affordable Modification Program (HAMP).

50.   Over the next nine months, AHMSI and Menashi remained in near constant communication in their efforts to finalize Menashi's HAMP modification.

51.   During this period, Menashi timely paid each and every monthly mortgage payment in full.

52.   Menashi has never been delinquent on any obligation being collected by AHMSI on behalf of Wilmington and the Investment Trust.

53.   In November 2009, AHMSI sent to Menashi a proposed HAMP modification trial period agreement related to Menashi's mortgage loan with Wilmington and the Investment Trust.

54.   This agreement required, among other things, that Menashi make three "trial period" payments in order for Menashi to receive a final HAMP modification.

55.   Menashi duly executed all necessary documents related to the HAMP trial period agreement.

56.   Menashi timely paid each and every payment due during the HAMP trial period agreement and timely fulfilled each and every obligation arising thereunder.

57.   In March 2010 and after Menashi timely paid each payment under the HAMP trial period agreement, AHMSI offered Menashi a formal HAMP modification agreement.

58.   Menashi accepted the offered agreement, duly executed the HAMP modification agreement on March 9, 2010, and timely returned the completed HAMP modification documents to AHMSI.

59.   Wilmington, on behalf of the Investment Trust, executed the HAMP modification agreement on or about March 17, 2010 and delivered the signed agreement to Menashi.

60. From the date of execution of the HAMP modification agreement through February 2011, Menashi timely paid each and every payment due under the HAMP modification and otherwise timely fulfilled each of his obligations thereunder.

61. In early February 2011 and without notice to Menashi, AHMSI removed from Menashi's payment history and account many or all of Menashi's payments paid to AHMSI under the HAMP modification.

62. To the knowledge of Menashi, these payments were "removed" from Menashi's mortgage loan account and placed into an "unapplied funds" account, where the payments are presumably held by AHMSI but not credited to Menashi's account.

63. AHMSI has not returned any of the unapplied funds to Menashi and AHMSI has not applied them to the amounts due under the HAMP modification agreement.

64. Despite demand, AHMSI has failed to adequately account to Menashi for these removed and unapplied payments.

65. In late February 2011, Menashi attempted to pay his mortgage payment due March 1, 2011.

66. AHMSI rejected and refused to accept the March 1, 2011 payment from Menashi.

67. As Menashi was unaware of any problems with his loan and HAMP modification, Menashi promptly contacted AHMSI to ascertain why his payment was refused by AHMSI.

68. AHMSI then informed Menashi that AHMSI was no longer going to honor Menashi's HAMP modification agreement.

69.   At this time, AHMSI acknowledged that the HAMP modification was a valid contract, but insisted AHMSI would still not honor the contract because it was a "mistake."

70.   At the time of AHMSI's rejection of Menashi's payment and AHMSI's refusal to honor the HAMP modification, Menashi had made 12 months of modified payments to AHMSI, plus the initial three trial period payments.

71.   Menashi fully and timely performed all of his obligations under the HAMP modification agreement and AHMSI accepted this performance from Menashi.

72.   Menashi reasonably relied on the enforceability of the HAMP modification to his detriment.

73.   Menashi materially changed his position in reliance upon AHMSI's actions to enter into the HAMP modification agreement.

74.   The terms of the HAMP modification agreement are clear, definite, and unambiguous.

75.   AHMSI's actions and representations were within the scope of AHMSI's agency relationship with Wilmington and the Investment Trust.

76.   AHSMI and Wilmington should reasonably be required to honor and perform under the HAMP modification.

77.   Without specific enforcement, Menashi has no adequate remedy at law to require Wilmington and AHMSI to honor the HAMP modification.

78.   Menashi has no adequate remedy at law to obtain an accounting of Menashi's payments to AHMSI.

79. After refusing to honor the HAMP modification agreement and removing Menashi's payments from his account payment history, AHMSI then began reporting false and inaccurate credit information to Equifax, TransUnion, and Experian.

80. AHMSI reported to Equifax, TransUnion, and Experian that Menashi was delinquent in making payments alleged as due and owing to AHMSI.

81. As shown above, Menashi remained current, and continues to remain current, on each and every obligation to AHMSI.

82. Menashi was never delinquent in making any payment or performing any obligation required of him under the HAMP modification agreement.

83. Equifax, TransUnion, and Experian have reported derogatory and inaccurate statements and information relating to Menashi's credit history to third parties (hereafter the "inaccurate information").

84. The inaccurate information includes, but is not limited to, allegedly delinquent payments from Menashi to AHMSI.

85. The inaccurate information negatively reflects upon Menashi, Menashi's credit repayment history, Menashi's financial responsibility as a debtor, and Menashi's creditworthiness.

86. Equifax has been reporting the inaccurate information through the issuance of false and inaccurate credit information and consumer credit reports that it has disseminated to various persons and credit grantors, both known and unknown.

87. The inaccurate information reported by Equifax was illogical and inconsistent with prior information concerning Menashi received by Equifax.

88.   Equifax failed to employ, or failed to follow, reasonable procedures designed to avoid reporting inaccurate and illogical credit information concerning Menashi.

89.   Despite the illogical inconsistencies, Equifax failed to conduct any reasonable investigation of the illogical information and Equifax willfully and intentionally continued reporting the illogical information.

90.   Menashi has disputed the inaccurate information with Equifax by following Equifax's established procedure for disputing consumer credit information.

91.   Notwithstanding Menashi's efforts, Equifax has sent Menashi correspondence indicating Equifax's intent to continue publishing the inaccurate information and Equifax has, in fact, continued to publish and disseminate such inaccurate information to other third parties, persons, entities and credit grantors. Equifax has published and disseminated consumer reports to such third parties, including but not limited to, from March 2011 through the present.

92.   Despite Menashi's efforts, Equifax has never: (1) contacted Menashi to follow up on, verify and/or elicit more specific information about Menashi's dispute; (2) contacted third parties that would have relevant information concerning Menashi's disputes; (3) forwarded all relevant information concerning Menashi's disputes to the entities originally furnishing the inaccurate information; and (4) requested or obtained any other relevant documents from the entities furnishing the inaccurate information, or from any third party.

93.   Despite Plaintiff's exhaustive efforts to date, Equifax has nonetheless deliberately, willfully, intentionally, recklessly and negligently repeatedly failed to perform

reasonable reinvestigations of the above disputes, has failed to remove the inaccurate information, has failed to report on the results of its reinvestigations to all credit reporting agencies, has failed to note the disputed status of the inaccurate information and has continued to report the derogatory inaccurate information about Menashi.

94. Menashi has applied for and has been denied loans and extensions of consumer credit and the basis for these denials was the inaccurate information that appears on Menashi's Equifax credit report which was a substantial factor for those denials.

95. Menashi's credit report has been obtained from Equifax and has been reviewed by prospective and existing credit grantors and extenders of credit, and the inaccurate information has been a substantial factor in precluding Menashi from receiving different credit offers and opportunities, known and unknown.

96. TransUnion has been reporting the inaccurate information through the issuance of false and inaccurate credit information and consumer credit reports that it has disseminated to various persons and credit grantors, both known and unknown.

97. The inaccurate information reported by TransUnion was illogical and inconsistent with prior information concerning Menashi received by TransUnion.

98. TransUnion failed to employ, or failed to follow, reasonable procedures designed to avoid reporting inaccurate and illogical credit information concerning Menashi.

99. Despite the illogical inconsistencies, TransUnion failed to conduct any reasonable investigation of the illogical information and TransUnion willfully and intentionally continued reporting the illogical information.

100. Menashi has disputed the inaccurate information with TransUnion by following TransUnion's established procedure for disputing consumer credit information.

101. Notwithstanding Menashi's efforts, TransUnion has sent Menashi correspondence indicating TransUnion's intent to continue publishing the inaccurate information and TransUnion has, in fact, continued to publish and disseminate such inaccurate information to other third parties, persons, entities and credit grantors. TransUnion has published and disseminated consumer reports to such third parties, including but not limited to, from March 2011 through the present.

102. Despite Menashi's efforts, TransUnion has never: (1) contacted Menashi to follow up on, verify and/or elicit more specific information about Menashi's dispute; (2) contacted third parties that would have relevant information concerning Menashi's disputes; (3) forwarded all relevant information concerning Menashi's disputes to the entities originally furnishing the inaccurate information; and (4) requested or obtained any other relevant documents from the entities furnishing the inaccurate information, or from any third party.

103. Despite Plaintiff's exhaustive efforts to date, TransUnion has nonetheless deliberately, willfully, intentionally, recklessly and negligently repeatedly failed to perform reasonable reinvestigations of the above disputes, has failed to remove the inaccurate information, has failed to report on the results of its reinvestigations to all credit reporting agencies, has failed to note the disputed status of the inaccurate information and has continued to report the derogatory inaccurate information about Menashi.

104. Menashi has applied for and has been denied loans and extensions of consumer credit and the basis for these denials was the inaccurate information that appears on Menashi's TransUnion credit report which was a substantial factor for those denials.

105. Menashi's credit report has been obtained from TransUnion and has been reviewed by prospective and existing credit grantors and extenders of credit, and the inaccurate information has been a substantial factor in precluding Menashi from receiving different credit offers and opportunities, known and unknown.

106. Experian has been reporting the inaccurate information through the issuance of false and inaccurate credit information and consumer credit reports that it has disseminated to various persons and credit grantors, both known and unknown.

107. The inaccurate information reported by Experian was illogical and inconsistent with prior information concerning Menashi received by Experian.

108. Experian failed to employ, or failed to follow, reasonable procedures designed to avoid reporting inaccurate and illogical credit information concerning Menashi.

109. Despite the illogical inconsistencies, Experian failed to conduct any reasonable investigation of the illogical information and Equifax willfully and intentionally continued reporting the illogical information

110. Menashi has disputed the inaccurate information with Experian by following Experian's established procedure for disputing consumer credit information.

111. Notwithstanding Menashi's efforts, Experian has sent Menashi correspondence indicating Experian's intent to continue publishing the inaccurate information and Experian has, in fact, continued to publish and disseminate such inaccurate

information to other third parties, persons, entities and credit grantors. Experian has published and disseminated consumer reports to such third parties, including but not limited to, from March 2011 through the present.

112.   Despite Menashi's efforts, Experian has never: (1) contacted Menashi to follow up on, verify and/or elicit more specific information about Menashi's dispute; (2) contacted third parties that would have relevant information concerning Menashi's disputes; (3) forwarded all relevant information concerning Menashi's disputes to the entities originally furnishing the inaccurate information; and (4) requested or obtained any other relevant documents from the entities furnishing the inaccurate information, or from any third party.

113.   Despite Plaintiff's exhaustive efforts to date, Experian has nonetheless deliberately, willfully, intentionally, recklessly and negligently repeatedly failed to perform reasonable reinvestigations of the above disputes, has failed to remove the inaccurate information, has failed to report on the results of its reinvestigations to all credit reporting agencies, has failed to note the disputed status of the inaccurate information and has continued to report the derogatory inaccurate information about Menashi.

114.   Menashi has applied for and has been denied loans and extensions of consumer credit and the basis for these denials was the inaccurate information that appears on Menashi's Experian credit report which was a substantial factor for those denials.

115.   Menashi's credit report has been obtained from Experian and has been reviewed by prospective and existing credit grantors and extenders of credit, and the inaccurate

information has been a substantial factor in precluding Menashi from receiving different credit offers and opportunities, known and unknown.

116. Menashi disputed the inaccurate information directly with AHMSI.

117. In addition, AHMSI received notice of Menashi's dispute concerning the inaccurate information from Equifax, TransUnion, and Experian.

118. Despite receiving notice of Menashi's dispute from Equifax, TransUnion and Experian, AHMSI failed to conduct timely and reasonable investigations of Menashi's disputes, AHMSI willfully continued to report the inaccurate information to Equifax, TransUnion, and Experian and AHMSI failed to mark the Menashi's account as disputed.

119. As a further result of the Defendants' conduct, Menashi has suffered great emotional and mental pain and anguish, and Menashi will continue to suffer the same for an indefinite time in the future, all to Menashi's great detriment and loss.

120. As a further result of the Defendants' conduct, Menashi has suffered injury to his credit rating and reputation, and Menashi will continue to suffer the same for an indefinite time in the future, all to Menashi's great detriment and loss.

121. As a result of the Defendants' conduct, Menashi has suffered a decreased credit score.

122. Without limitation, Menashi has suffered damages from missed credit opportunity related to Menashi's inability to finance at least three separate income properties and Menashi's inability to obtain other consumer financing.

123. Further, Menashi has been forced to take leave from his employment in the military reserve, where Menashi serves as a pilot, because Menashi did not believe he was

capable of flying because of the stress and emotional damage caused by the Defendants.

124. At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

125. At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of the Plaintiff herein.

126. Menashi has hired the undersigned attorneys and agreed to pay a reasonable fee.

127. As a result of the Defendants' intentional, willful, and grossly negligent conduct, Menashi is entitled to an award of punitive damages.

## COUNT I - FCRA
## Menashi v. AHMSI

128. The Plaintiff re-alleges and incorporates herein by reference paragraphs 1-127 above.

129. At all times pertinent hereto, AHMSI was a "person" as contemplated by 15 U.S.C. § 1681a(b).

130. Defendants AHMSI violated sections 1681n and 1681o of the FCRA by engaging in the following conduct:

    a.  willfully and negligently failing to conduct an investigation of the inaccurate information that Plaintiff disputed;

b. willfully and negligently failing to review all relevant information concerning Plaintiff's account provided to AHMSI;

c. willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

d. willfully and negligently failing to report the inaccurate status of the inaccurate information to all credit reporting agencies;

e. willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all credit reporting agencies concerning the inaccurate information disputed by Plaintiff;

f. willfully and negligently failing to provide any and all credit reporting agencies with the factual information and evidence that Plaintiff submitted to AHMSI and which proved that the information concerning the Plaintiff's credit reports was inaccurate;

g. willfully and negligently continuing to furnish and disseminate inaccurate and derogatory credit, account and other information concerning the Plaintiff to credit reporting agencies and other entities; and

h. willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. §1681s-2(b).

131. AHMSI's conduct was a direct and proximate cause, as well as a substantial factor, in causing the serious injuries, damages and harm to the Plaintiff that are outlined more fully above, and as a result, AHMSI is liable to compensate Plaintiff for the full

amount of statutory, actual and punitive damages, along with attorney's fees and costs, as well as such other relief, permitted by law.

## COUNT II – FCCPA
### Menashi v. AHMSI

132. The Plaintiff re-alleges and incorporates herein by reference paragraphs 1-127 above.

133. At all times pertinent hereto, AHMSI was a "person" as contemplated by the FLA. STAT. § 559.72.

134. At all times pertinent hereto, Menashi was a "consumer" as contemplated by FLA. STAT. § 559.55.

135. The alleged debt being collected from Menashi by AHMSI concerned an obligation to pay money arising out of a transaction for property used primarily for household and family purposes.

136. At all times pertinent hereto, the alleged obligation between AHMSI and Menashi was a "consumer debt" as contemplated by FLA. STAT. § 559.55.

137. Pursuant to Fla. Stat. § 559.77, AHMSI is liable to the Plaintiff for engaging in the following conduct:

    a. disclosing to a person other than the debtor or their family information affecting the debtor's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information or that the information is false, in violation of FLA. STAT. § 559.72(5); and

    b. asserting the existence of a legal right that AHMSI knew did not exist, in violation of Fla. Stat. § 559.72(9).

    c.   disclosing information concerning the existence of a debt known to be reasonably disputed by the debtor without disclosing that fact, in violation of FLA. STAT. § 559.72(6).

138.    AHMSI's conduct was a direct and proximate cause, as well as a substantial factor, in causing the serious injuries, damages and harm to the Plaintiff that are outlined more fully above, and as a result, AHMSI is liable to compensate Plaintiff for the full amount of statutory, actual and punitive damages, along with attorney's fees and costs, as well as such other relief, permitted by law.

### COUNT III – Accounting
### Menashi v. AHMSI

139.    The Plaintiff re-alleges and incorporates herein by reference paragraphs 1-127 above.

140.    AHMSI has failed to account to Menashi for payments made by Menashi to AHMSI.

141.    The contract and relationship between Menashi and AHMSI involves extensive obligations and complex accounting.

142.    Menashi has no adequate remedy at law to obtain an accounting for his payments.

143.    Therefore, AHMSI must equitably be made to account to Menashi for all payments made by Menashi to AHMSI.

### COUNT IV – Specific Performance
### Menashi v. AHMSI and Wilmington

144.    The Plaintiff re-alleges and incorporates herein by reference paragraphs 1-127 above.

145.    Menashi and Wilmington, acting by and through AHMSI as its agent, entered into a HAMP modification legally binding on Menashi and Wilmington.

146.   Menashi fully performed each of his obligations under the HAMP modification and Wilmington and AHMSI accepted Menashi's performance until March 1, 2011.

147.   Wilmington, through its agent AHMSI, now refuses to honor the HAMP modification agreement.

148.   The HAMP modification agreement between Menashi and Wilmington contains all of the essential terms of an enforceable contract.

149.   Menashi is ready, willing and able to continue his performance under the HAMP modification agreement.

150.   Therefore, AHMSI and Wilmington should be ordered and required to specifically perform their obligations as stated in the HAMP modification agreement between the parties.

### COUNT V – Breach of Contract
### Menashi v. AHMSI and Wilmington

151.   The Plaintiff re-alleges and incorporates herein by reference paragraphs 1-127 above.

152.   As an alternative theory to specific performance, the Plaintiff alleges that AHMSI and Wilmington have breached the terms of the HAMP modification agreement.

153.   The HAMP modification agreement between the Investment Trust and Menashi required Menashi to make payments and AHMSI, Wilmington, and the Investment Trust to accept those payments and apply the payments appropriately.

154.   AHMSI and Wilmington are in breach of the HAMP modification agreement by their failure to honor the agreement, by their failure to properly account for and apply Menashi's payments, and by their refusal to accept properly tendered payments by Menashi as required by the HAMP modification agreement.

155.    Menashi has suffered actual and consequential damages as a result of AHMSI's and Wilmington's breach of the HAMP modification agreement.

156.    The agreements between Menashi, AHMSI, and Wilmington provide for the recovery of reasonable costs and attorney's fees to the successful party to this action.

157.    As a direct and proximate result of AHMSI's and Wilmington's conduct, AHMSI and Wilmington are liable to the Plaintiff for actual and consequential damages, reasonable costs, and reasonable attorney's fees.

### COUNT VI – FCRA
### Menashi v. Equifax

158.    The Plaintiff re-alleges and incorporates herein by reference paragraphs 1-127 above.

159.    At all times pertinent hereto, Equifax was a "person" and "consumer reporting agency" as those terms are defined by 15 U.S.C. § 1681a(b) and (f).

160.    At all times pertinent hereto, Menashi was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

161.    At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

162.    Pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o, Equifax is liable to the Plaintiff for engaging in the following conduct:

        a.    willfully and negligently failing to conduct a proper and reasonable reinvestigation concerning the inaccurate information after receiving notice of the dispute from the Plaintiff, in violation of 15 U.S.C. §1681i(a);

b. willfully and negligently failing to provide prompt notice of the inaccurate information and Plaintiff's dispute to the furnishing entities, in violation of 15 U.S.C. §1681i(a);

c. willfully and negligently failing to provide all relevant information provided by the Plaintiff regarding the dispute of the inaccurate information to the furnishing entities, in violation of 15 U.S.C. §1681i(a);

d. willfully and negligently failing to review and consider all relevant information submitted by the Plaintiff concerning the dispute of the inaccurate information, in violation of 15 U.S.C. §1681i(a);

e. willfully and negligently failing to delete the inaccurate information from Plaintiff's credit file after reinvestigation, in violation of 15 U.S.C. §1681i(a);

f. willfully and negligently failing to note the Plaintiff's dispute of the inaccurate information and in subsequent consumer reports, in violation of 15 U.S.C. §1681i(c);

g. willfully and negligently failing to timely and properly investigate the inaccurate information after receiving notice of the dispute from the Plaintiff;

h. willfully and negligently failing to employ and follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report, information and file, in violation of 15 U.S.C. §1681e(b);

i. willfully and negligently failing to properly and timely delete the inaccurate information from the Plaintiff's credit files despite being unable to verify the

accuracy of the information and/or being provided with proof of its inaccuracy; and

j.  willfully and negligently continuing to report the inaccurate information despite having knowledge of its inaccuracy and/or inability to be verified.

163.  The conduct of Equifax was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff that are outlined more fully above and, as a result, Equifax is liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## COUNT VII – FCRA
### Menashi v. TransUnion

164.  The Plaintiff re-alleges and incorporates herein by reference paragraphs 1-127 above.

165.  At all times pertinent hereto, TransUnion was a "person" and "consumer reporting agency" as those terms are defined by 15 U.S.C. § 1681a(b) and (f).

166.  At all times pertinent hereto, Menashi was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

167.  At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

168.  Pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o, TransUnion is liable to the Plaintiff for engaging in the following conduct:

a.  willfully and negligently failing to conduct a proper and reasonable reinvestigation concerning the inaccurate information after receiving notice of the dispute from the Plaintiff, in violation of 15 U.S.C. §1681i(a);

b.  willfully and negligently failing to provide prompt notice of the inaccurate information and Plaintiff's dispute to the furnishing entities, in violation of 15 U.S.C. §1681i(a);

c.  willfully and negligently failing to provide all relevant information provided by the Plaintiff regarding the dispute of the inaccurate information to the furnishing entities, in violation of 15 U.S.C. §1681i(a);

d.  willfully and negligently failing to review and consider all relevant information submitted by the Plaintiff concerning the dispute of the inaccurate information, in violation of 15 U.S.C. §1681i(a);

e.  willfully and negligently failing to delete the inaccurate information from Plaintiff's credit file after reinvestigation, in violation of 15 U.S.C. §1681i(a);

f.  willfully and negligently failing to note the Plaintiff's dispute of the inaccurate information and in subsequent consumer reports, in violation of 15 U.S.C. §1681i(c);

g.  willfully and negligently failing to timely and properly investigate the inaccurate information after receiving notice of the dispute from the Plaintiff;

h.  willfully and negligently failing to employ and follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report, information and file, in violation of 15 U.S.C. §1681e(b);

    i.   willfully and negligently failing to properly and timely delete the inaccurate information from the Plaintiff's credit files despite being unable to verify the accuracy of the information and/or being provided with proof of its inaccuracy; and

    j.  willfully and negligently continuing to report the inaccurate information despite having knowledge of its inaccuracy and/or inability to be verified.

169.    The conduct of TransUnion was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff that are outlined more fully above and, as a result, TransUnion is liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## COUNT VIII – FCRA
### Menashi v. Experian

170.    The Plaintiff re-alleges and incorporates herein by reference paragraphs 1-127 above.

171.    At all times pertinent hereto, Experian was a "person" and "consumer reporting agency" as those terms are defined by 15 U.S.C. § 1681a(b) and (f).

172.    At all times pertinent hereto, Menashi was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

173.    At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

174.    Pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o, Experian is liable to the Plaintiff for engaging in the following conduct:

a. willfully and negligently failing to conduct a proper and reasonable reinvestigation concerning the inaccurate information after receiving notice of the dispute from the Plaintiff, in violation of 15 U.S.C. §1681i(a);

b. willfully and negligently failing to provide prompt notice of the inaccurate information and Plaintiff's dispute to the furnishing entities, in violation of 15 U.S.C. §1681i(a);

c. willfully and negligently failing to provide all relevant information provided by the Plaintiff regarding the dispute of the inaccurate information to the furnishing entities, in violation of 15 U.S.C. §1681i(a);

d. willfully and negligently failing to review and consider all relevant information submitted by the Plaintiff concerning the dispute of the inaccurate information, in violation of 15 U.S.C. §1681i(a);

e. willfully and negligently failing to delete the inaccurate information from Plaintiff's credit file after reinvestigation, in violation of 15 U.S.C. §1681i(a);

f. willfully and negligently failing to note the Plaintiff's dispute of the inaccurate information and in subsequent consumer reports, in violation of 15 U.S.C. §1681i(c);

g. willfully and negligently failing to timely and properly investigate the inaccurate information after receiving notice of the dispute from the Plaintiff;

h. willfully and negligently failing to employ and follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report, information and file, in violation of 15 U.S.C. §1681e(b);

i.   willfully and negligently failing to properly and timely delete the inaccurate information from the Plaintiff's credit files despite being unable to verify the accuracy of the information and/or being provided with proof of its inaccuracy; and

j.   willfully and negligently continuing to report the inaccurate information despite having knowledge of its inaccuracy and/or inability to be verified.

175.   The conduct of Experian was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff that are outlined more fully above and, as a result, Experian is liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## JURY DEMAND

176.   The Plaintiff hereby demands trial by jury on all issues so triable.

WHEREFORE, the Plaintiff, SHLOMO DANIEL MENASHI, respectfully demands the following relief:

(A)   That this Court award the Plaintiff statutory damages;

(B)   That this Court award the Plaintiff actual damages as proven at trial;

(C)   That this Court award the Plaintiff punitive damages against the Defendants;

(D)   That this Court award the Plaintiff's reasonable costs and attorney's fees;

(E)   That this Court provide the Plaintiff with a complete and total accounting of all monies paid to AHMSI;

(F)     That this Court enter an order directing the Defendants to immediately delete all of the inaccurate information from Plaintiff's credit reports and files and cease reporting the inaccurate information to any and all persons and entities to whom they report consumer credit information;

(G)     That this Court enter an order directing Equifax, TransUnion, and Experian to send to all persons and entities to whom they have reported Plaintiff's inaccurate information within the last three years Plaintiff's updated and corrected credit report information; and

(H)     That this Court award such other and further relief as is just and proper.

Respectfully submitted,


Adam J. Knight, Esq.
Florida Bar Number 69400
Attorney for the Plaintiff

Henry W. Hicks, P.A.
3003 West Azeele Street, Suite 200
Tampa, Florida 33609
Tele. 813.876.3113
Fax. 813.871.9202