UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHLOMO DANIEL MENASHI,

     Plaintiff,

v.                                CASE NO.: 8:11-cv-1346-T-23EAJ

AMERICAN HOME MORTGAGE
SERVICING, INC., et al.,

     Defendants.
_____/

## ORDER

     Shlomo Daniel Menashi sues (Doc. 1) American Home Mortgage Servicing, Inc. ("AHMSI"); Equifax Information Services, LLC; Trans Union, LLC; Experian Information Solutions, Inc.; and Wilmington Trust Company for conduct arising from the modification of Menashi's mortgage.  Menashi alleges that two of the defendants breached a contract, that four of the defendants engaged in wrongful credit reporting, and that one of the defendants committed wrongful debt collecting practices.  AHMSI moves (Doc. 15) to dismiss Count II of the complaint, which alleges that AHMSI violated the Florida Consumer Collection Practices Act, Section 559.55–785, Florida Statutes, and to dismiss Count III, which requests an equitable accounting.  AHMSI and Wilmington Trust move (Doc. 17) to strike Menashi's demand for a jury trial.  Trans Union moves (Doc. 9) to dismiss a request for equitable relief under the Fair Credit Reporting Act, 15 U.S.C. § 1681–81x.  Menashi responds to AHMSI (Doc. 24) and to AHMSI and Wilmington Trust (Doc. 25) but not to Trans Union.

AHMSI services Menashi's mortgage.  Menashi and AHMSI negotiated a

mortgage modification under the Home Affordable Modification Program ("HAMP"), and

Menashi complied with a three-month HAMP "trial period plan."[*]  In March, 2010,

AHMSI offered Menashi a permanent HAMP agreement, which Menashi accepted,

executed, and returned.  Menashi, whose allegations are at this stage assumed true,

claims that in February, 2011, AHMSI "removed from Menashi's payment history and

account many or all of Menashi's payments [] to AHMSI under the HAMP modification"

and placed the payments "into an 'un[-]applied funds' account."  (Doc. 1 at 8)  AHMSI

rejected a mortgage payment from Menashi and informed Menashi that the HAMP

mortgage modification, although a valid contract, was a "mistake" that AHMSI would not

honor.  After rejecting the HAMP mortgage modification, AHMSI reported to the

---

[*] As stated in Thomas v. JPMorgan Chase & Co., ___ F.Supp.2d ___ , 2011 WL 3273477, *1-*2 (S.D.N.Y. 2011):

> In response to the financial crisis Congress enacted the Emergency Economic Stabilization Act of 2008, which in turn authorized the Secretary of the Treasury to establish the Troubled Asset Relief Program ("TARP").  [Pub.L.No. 110-343, 122 Stat. 3765 (codified as amended at 12 U.S.C. §§ 5201-5261)].  TARP directed the Secretary of the Treasury to "implement a plan that seeks to maximize assistance for homeowners" and allowed the Secretary to "use loan guarantees and credit enhancements to facilitate loan modifications to prevent avoidable foreclosures." [12 U.S.C. § 5219(a)(1)].  Under this authority, the Department of the Treasury announced the "Making Home Affordable Program" in February 2009, which included the "Home Affordable Mortgage Program" ("HAMP").  HAMP was aimed at helping homeowners who were in, or were at immediate risk of being in, default on their home loans by reducing monthly payments to sustainable levels.
> . . . .
>
> If the borrower is eligible [for a home loan modification under HAMP] , . . the lender reduces the monthly mortgage payment to thirty-one percent of the homeowner's gross monthly income. The homeowner participates in a three-month Trial Period Plan ("TPP"), based on the new mortgage payment . . . . Following successful completion of the TPP, including final approval by the lender, the lender will permanently modify eligible mortgages.

defendants Equifax, Trans Union, and Experian that Menashi was behind on his

mortgage.  Menashi insists that AHMSI's credit information report was false.

AHMSI challenges Menashi's invocation of Sections 559.72(5), (6), and (9) of the

Florida Consumer Collection Practices Act ("FCCPA").  Menashi concedes that the Fair

Credit Reporting Act ("FCRA") pre-empts a claim under Section 559.72(5) or (6), which

require no further attention.  Section 559.72(9) states:

> In collecting consumer debts, no person shall:
> . . . .
>
> (9) Claim, attempt, or threaten to enforce a debt when such person
> knows the debt is not legitimate, or assert the existence of some
> other legal right when such person knows that the right does not
> exist.

AHMSI argues that the FCRA pre-empts Section 559.72(9).  By force of 15 U.S.C.

§ 1681t(b)(1)(F):

> (b) . . . No requirement or prohibition may be imposed under the laws
> of any State–
>
> (1) with respect to any subject matter regulated under–
> . . . .
>
> (F) section 1681s-2 of this title, relating to the responsibilities of
> persons who furnish information to consumer reporting
> agencies . . . .

(Section 1681t(b)(1)(F) closes with exceptions not pertinent here.)

Section 1681s-2 with comprehensive detail instructs credit information providers

how to report credit information and investigate disputed information.  Although Section

1681s-2 thoroughly addresses "the responsibilities of persons who furnish information to

consumer reporting agencies," nothing in Section 1681s-2 addresses the responsibilities

of a person who collects debt.  Hence, Judge Wilkinson observes that an "unfair debt

collection practices claim survives [FCRA] preemption" if the defendant's debt collecting is separate from the defendant's credit reporting. Ross v. Fed. Deposit Ins. Corp., 625 F.3d 808, 810, 817 (4th Cir. 2010); accord Osborne v. Vericrest Fin., Inc., 2011 WL 1878227 (M.D. Fla. 2011) (Moody, J.) (holding an FCCPA claim pre-empted by the FCRA "to the extent [the claim] is premised on credit reporting activity" but not to the extent the claim arises from "repeated[] telephoning [of] Plaintiffs demanding payment of a debt"); Islam v. Option One Mortg. Corp., 432 F.Supp.2d 181, 190 and n.9 (D.Mass. 2006).

In Ross, the plaintiff alleged a violation of the North Carolina Debt Collection Act for both false credit reporting and unfair debt collecting by the defendant.  The Fourth Circuit found the claim (1) pre-empted by the FCRA to the extent the claim arose from the defendant's inaccurate credit reporting but (2) allowed to the extent the claim arose from the defendant's unfair debt collecting practices.  625 F.3d at 817.  Ross accords with Section 1681t(b)(1)(F), which protects a provider of credit information from a state regulation only to the extent that the state regulation addresses the same "subject" – credit information reporting or investigating – as Section 1681s-2.

AHMSI cites a bevy of cases for the proposition that the FCRA can pre-empt a law that regulates debt collection, and, quoting a widely followed district court decision, AHMSI argues that Section 1681t(b)(1)(F) pre-empts "all state causes of action against furnishers of [credit] information, not just ones that stem from statutes that relate specifically to credit reporting."  (Doc. 15 at 3) (quoting Jaramillo v. Experian Information Solutions, Inc., 155 F.Supp.2d 356, 362 (E.D. Pa. 2001)).

Section 1681t(b)(1)(F) does not literally pre-empt "all state causes of action against furnishers of credit information."  Section 1681t(b)(1)(F) pre-empts "all state causes of action against furnishers of credit information" that regulate credit reporting – including a cause of action under a state law that is not directed expressly to the regulation of credit information (for example, a debt collection act).  See Nelson v. Equifax Information Serv., LLC, 522 F.Supp.2d 1222, 1233 (C.D. Cal. 2007) ("statutes that do not overtly regulate credit reporting may still have the effect of regulating that area").  As Ross shows, if a state law regulates credit reporting only in limited circumstances, Section 1681t(b)(1)(F) pre-empts the application of the state law only in those limited circumstances.  See Islam, 432 F.Supp.2d at 190 and n.9 ("The [FCRA] preempt[s] that part of the [plaintiffs'] state-law negligence claim based on [the defendant's] inaccurate reports to credit agencies , . . [but the FCRA] preempt[s] only that aspect . . . . Any negligence in the accounting, servicing, and collection of debt [is] not [] preempted . . . ."); Pirouzian v. SLM Corp., 396 F.Supp.2d 1124, 1130 (S.D. Cal. 2005) ("the [state law debt collection] claims in this case are preempted by the FCRA because they pertain to Defendant's reporting of or failure to report certain [credit] information about Plaintiff"); Riley v. General Motors Acceptance Corp., 226 F.Supp.2d 1316, 1322 (S.D. Ala. 2002) ("The issue [] is whether the conduct which gives rise to the plaintiff's FCRA claims . . . may also form the basis for state law [tort] claims"); Hasvold v. First USA Bank, N.A., 194 F.Supp.2d 1228, 1239 (D. Wyo. 2002) ("the FCRA preempts plaintiff's claims against the defendant relating to it as a furnisher of information"); Johnson v. Citimortgage, Inc., 351 F.Supp.2d 1368,1374 (N.D. Ga. 2004) (citing Hasvold).

In this action, the FCRA, Section 1681t(b)(1)(F), pre-empts the FCCPA, Section 559.72(9), only if AHMSI violated Section 559.72(9) while engaging in credit reporting activity regulated by the FCRA, Section 1681s-2.  Menashi alleges that AHMSI violated Section 559.72(9) by refusing to honor the HAMP mortgage modification despite knowing the modification was a valid contract (that is, AHMSI's refusal was an assertion of a legal right that AHMSI knew did not exist).  Menashi does not allege that AHMSI rejected the mortgage modification with a design to alter or to report inaccurately Menashi's credit information.  If AHMSI reneges on a mortgage modification because AHMSI concludes the modification is a bad deal, that decision bears no connection to the aims, and falls outside the scope, of Section 1681s-2, which contains nothing that addresses the servicing of a loan or the breaching of a contract.  Like the plaintiff in Ross, Menashi asserts two wrongs, a tactic to collect a debt and a report of inaccurate credit information, which are separable for purposes of pre-emption.

"As to Menashi's poorly-[pleaded] claim entitled 'accounting,'" states AHMSI, "there is no such cause of action."  (Doc. 15 at 1)  There is an "equitable accounting," however, and Menashi requests one.  "[A] party seeking an equitable accounting must demonstrate that [] the parties share a fiduciary relationship or the questioned transactions are complex, and [that] the remedy at law is inadequate."  Cont'l Cas. Co. v. First Fin. Emp. Leasing, Inc., 716 F.Supp.2d 1176, 1193 (M.D. Fla. 2010).

The complaint alleges that "the contract [] between Menashi and AHMSI involves extensive obligations and complex accounting."  (Doc. 1 at 20)  The allegation enjoys no factual support in the complaint.  Menashi challenges only a transfer of fifteen months' worth of monthly HAMP modified mortgage payments from Menashi's mortgage

payment history to an "un-applied funds" account.  The transaction is insufficiently complex to require the exceptional remedy of an equitable accounting.  See Dairy Queen, Inc. v. Wood, 369 U.S. 469, 478 (1962) (explaining that a special master can unravel a complex transaction for a jury in all but "a rare case"); Zaki Kulaibee Establishment v. McFlicker, ___ F.Supp.2d ___, 2011 WL 1559791, *4 (S.D. Fla. 2011) (Cooke, J.) (finding an equitable accounting unwarranted in an action involving thousands of sales transactions).

The complaint alleges also that "Menashi has no adequate remedy at law." (Doc. 1 at 20)  If Menashi can recover fully on the claim against AHMSI for breach of contract, the need for an equitable remedy vanishes.  See Kee v. Nat'l Reserve Life Ins. Co., 918 F.2d 1538, 1541 (11th Cir. 1990); McFlicker, ___ F.Supp.2d ___, 2011 WL 1559791, *3-*4.  (No claim other than the breach of contract claim justifies an accounting against AHMSI.  See Bernardele v. Bonorino, 608 F.Supp.2d 1313, 1329 (S.D. Fla. 2009) (Gold, J.) ("[a] complaint in equity for an accounting must show that the plaintiff is entitled to the relief sought . . ."); cf. Johnson v. Pullman, Inc., 845 F.2d 911, 913 (11th Cir. 1988) (Alabama law); 1A C.J.S., Accounting § 6 (2011).)  A calculation of Menashi's loss from a breach by AHMSI will not prove difficult.  Again, Menashi alleges merely that he for fifteen months paid AHMSI a set monthly installment under the HAMP modified mortgage but that AHMSI in effect cancelled the payments.  If AHMSI breached, Menashi should know the amount AHMSI must pay; and if Menashi does not know, AHMSI should know and must confirm the amount during discovery.  See Managed Care Solutions, Inc. v. Essent Healthcare, Inc., 694 F.Supp.2d 1275, 1281

(S.D. Fla. 2010) (Seitz, J.); <u>Bernardele</u>, 608 F.Supp.2d at 1329.  An equitable accounting is unnecessary.

Menashi neglects Trans Union's motion to dismiss the request for equitable relief under the FCRA.  Only the FTC may obtain an injunction under the FCRA.  <u>See</u>, <u>e.g.</u>, <u>Washington v. CSC Credit Serv. Inc.</u>, 199 F.3d 263, 268-69 (5th Cir. 2000); <u>Hamilton v. DirecTV, Inc.</u>, 642 F.Supp.2d 1304, 1307 (M.D. Ala. 2009); <u>Mangio v. Equifax, Inc.</u>, 887 F.Supp. 283, 284-85 (S.D. Fla. 1995) (Moore, J.).

AHMSI's motion (Doc. 15) to dismiss is **GRANTED IN PART** in that Menashi's claims under Sections 559.72(5) and (6) and Menashi's request for an equitable accounting are **DISMISSED WITH PREJUDICE**.  The motion is otherwise **DENIED**.  Trans Union's motion (Doc. 9) to dismiss is **GRANTED**, and Menashi's request for equitable relief under the FCRA is **DISMISSED WITH PREJUDICE**.  For the reasons stated in AHMSI and Wilmington Trust's motion (Doc. 17), which is **GRANTED**, the jury demand is **STRICKEN**.

ORDERED in Tampa, Florida, on October 4, 2011.

_____
**STEVEN D. MERRYDAY**
**UNITED STATES DISTRICT JUDGE**